UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN J. SMITH, an individual, and KRISTI HOLLEY, in her capacity as Personal Representative of the Estate of Dawn Marie Steinmetz,<br><br>    Defendants. | Case No. 1:23-cv-00426-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are five motions: a Motion to Disqualify filed by Interpleader-Defendant Steven J. Smith (Dkt. 23), a Motion for Summary Judgment filed by Interpleader-Defendant Kristi Holley (Dkt. 24), a Motion for Interpleader Deposit filed by Interpleader-Plaintiff Unum Life Insurance Company of America ("Unum") (Dkt. 25), a Motion to Stay filed by Smith (Dkt. 28), and a Motion for Mediation or Settlement Conference filed by Smith (Dkt. 29).

Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will rule on the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS Unum's Motion (Dkt 25) and Smith's Motion to Stay (Dkt.

MEMORANDUM DECISION AND ORDER - 1

28). The Court DENIES Smith's Motion to Disqualify (Dkt. 23) and Motion for Settlement Conference (Dkt. 29), and Holley's Motion for Summary Judgment (Dkt. 24).

## II. BACKGROUND

### A. Factual Background

This action was initiated by Unum, pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. §§ 1335, 1397, and 2361. Unum requests that the Court determine the proper beneficiary of a life insurance policy.

During her life, Dawn Marie Steinmetz was an employee of Ensign Services, Inc. ("Ensign"), and a participant in a life and accidental death and dismemberment plan sponsored by Ensign and administered by Unum (the "Plan"). The Plan guarantees $25,000 in basic life coverage, $200,000 in supplemental life coverage, and $25,000 in basic accidental death and dismemberment coverage (the "Plan Benefits"). Steinmetz died on July 28, 2022, making the Plan Benefits payable to the proper beneficiary.

Holley—on behalf of the Estate of Steinmetz—and Smith have asserted competing claims to the Plan Benefits. At the time of Steinmetz's death, Smith was named as the primary beneficiary of the Plan. However, Smith was arrested on July 28, 2022—the date of Steinmetz's death—and was charged with murder for allegedly fatally shooting Steinmetz in the chest.

The Group Policies that funded the Plan Benefits identify Maine as the governing jurisdiction under their choice-of-law provision. Dkt. 1-1, at 3, 66. Under Maine's Probate Code, one "who feloniously and intentionally kills the decedent forfeits all benefits under this Article with respect to the decedent's estate . . . ." Title 18-C § 2-802(2). That section

MEMORANDUM DECISION AND ORDER - 2

elaborates, "[i]n absence of a conviction, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent." *Id.* at § 2-802(7).[1]

### B. Procedural Background

Unum initiated this suit and has made clear that it is "ready and willing to pay the [Plan Benefits] to the party legally entitled to [them]." Dkt. 25-1, at 5. However, given the "[c]onflicting issues of fact and law" present in this case, and in the interest of avoiding exposure to multiple liabilities, it asks the Court to determine whether Smith or Holley has the better claim. *Id.* On March 23, 2024, Smith filed his Motion to Disqualify on the basis that he appeared before the undersigned in a prior criminal matter unrelated to this case. Dkt. 23. On May 8, 2024, Holley filed a Motion for Summary Judgment. Dkt. 24. Shortly thereafter, Unum moved the Court to accept deposit of the Plan Benefits and discharge Unum. Dkt. 25. Later that month, Smith moved the Court to stay these proceedings until he is "sentenced, plead[s] guilty, or tried." Dkt. 28, at 2. He also filed a Motion for a Settlement Conference, asking Holley to agree to split the Plan Benefits. Dkt. 29, at 2.

---

[1] Where, as here, an action is brought under 28 U.S.C. § 1335, the federal district court should "apply the substantive law that a court of the forum state would apply." *Equitable Life Assurance Soc'y of U.S. v. McKay*, 837 F.2d 904, 905 (9th Cir. 1988). Idaho has a statute similar to Maine's, prohibiting a slayer from benefiting from his or her misdeeds. I.C. § 15-2-803(j)(1). However, "Idaho generally enforces choice-of-law provisions in contracts," unless doing so would run contrary to a fundamental state policy. *Stimpson v. Midland Credit Management, Inc.*, 347 F. Supp. 3d 538, 546 (D. Idaho 2018), *aff'd*, 944 F.3d 1190 (9th Cir. 2019). Neither party has raised, nor is the Court aware of any fundamental Idaho policy that would be violated by the Court's decision to honor the choice-of-law provision here. Accordingly, the Court finds the Maine statute, and not the Idaho statute, to be controlling.

MEMORANDUM DECISION AND ORDER - 3

### III. ANALYSIS

The Court will take up each motion separately, beginning with the first filed and moving to the most-recently filed.

**A. Smith's Motion to Disqualify (Dkt. 23)**

As noted above, Smith argues that because he previously appeared before the undersigned in a criminal matter, the undersigned's presiding over this case "is a conflict of interest." Dkt. 23, at 2. That criminal matter is 1:17-cr-342-CWD. Originally, it was a felony case assigned to the undersigned. However, this Court made no substantive or dispositive decisions, only issuing orders appointing new attorneys when necessary. The Government ultimately filed a Superseding Information that reduced the felony charge to a misdemeanor. The sentencing and disposition were handled by a magistrate judge.

*1. Legal Standard*

Under 28 U.S.C. § 144, a judge must recuse himself or herself from a case "[w]henever a party to any proceeding . . . makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." Other instances where recusal is appropriate are outlined in 28 U.S.C. § 455.[2]

*2. Discussion*

The fact that the undersigned may, for a few months, have presided over a criminal matter in which Smith was involved does not show personal bias or prejudice on the part

---

[2] These instances include circumstances "in which [the judge's] impartiality might reasonably be questioned," and those where the judge "has a personal bias or prejudice concerning a party." *Id.*

MEMORANDUM DECISION AND ORDER - 4

of the undersigned, nor is it a reasonable basis from which one could question the undersigned's impartiality. In a legal community the size of Idaho, it is not uncommon for parties to appear multiple times before the same judge. If a party's appearance before a certain judge were enough to disqualify that judge from any future cases involving that party, parties would quickly find themselves unable to appear before *any* Idaho judge.

In any event, Smith has not sufficiently shown that §§ 144 or 455—or any case interpreting those sections—apply in these circumstances. Accordingly, his Motion to Disqualify is DENIED.

**B. Holley's Motion for Summary Judgment (Dkt. 24)**

The Court turns next to Holley's Motion for Summary Judgment. Dkt. 24. Therein, she claims that undisputed evidence establishes that Smith willfully killed Steinmetz and is therefore precluded from receiving the Plan Benefits. *See generally* Dkt. 24-1.

*1. Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). On the other hand, to succeed

on a motion for summary judgment, the moving party must either (1) "produce evidence negating an essential element of the nonmoving party's claim or defense," or (2) "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

A respondent cannot avoid summary judgment by relying alone on an unsworn affidavit or the pleadings. Instead, he or she must set forth "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### 2. Discussion

Holley's Motion for Summary Judgment is based on the findings of the state magistrate judge who issued the order binding Smith over to state district court. Dkt. 24-6. At that preliminary hearing, the magistrate judge determined there was "probable or sufficient cause to believe the Defendant guilty" of intentionally killing Steinmetz, and that the government's case against Smith should go forward. *Id.* This finding was based, in part, on testimony that Smith's hand tested positive for gunshot residue the night of Steinmetz's death, that the gun Smith used had safety mechanisms to prevent accidental discharge, and that the fatal shot was determined to have been a contact shot—meaning the gun was in contact with Steinmetz's clothing when it was fired. Dkt. 24-7. Holley asserts that, from this evidence, it cannot be disputed that Smith willfully and unlawfully killed Steinmetz.

Smith readily admits that he shot Steinmetz. *See* Dkt. 27-2, at 4. However, he maintains that the shooting was accidental. *See, e.g.*, *id.* He claims that he and Steinmetz

MEMORANDUM DECISION AND ORDER - 6

shared a bed and slept with handguns under their pillows. Dkt. 29-2, at 6. Shortly after the two woke up on the morning of July 28, 2022, Smith claims that Steinmetz was helping him put eyedrops into his eyes. *Id*. at 5–6. When Steinmetz recommended Smith kneel on the bed, he accidentally knelt on his gun. *Id.* at 6. Finding this uncomfortable, Smith grabbed the gun. Immediately thereafter, he claims Steinmetz "put in some drops" that stung him and caused him to jerk his arms forward and fire the gun, killing Steinmetz. *Id.*

In support of his story, Smith introduces a Firearm Case Analysis conducted by Long Consulting Group. Dkt. 27-1. Therein, William Long, a former FBI Agent of twenty-five years with significant experience in criminal investigations and knowledge of firearms, concludes it is possible that Smith's shooting of Steinmetz was accidental, as Smith claims. Dkt. 27-1, at 10–12.[3]

The Court finds that Smith has provided sufficient evidence to avoid summary judgment. Under 18-C § 2-802, only those who *intentionally* kill a decedent forfeit life insurance benefits. Smith has set forth specific facts, supported by reasonably particular evidence—the Firearm Case Analysis—that his shooting of Steinmetz was not intentional. *See Far Out Prods.*, 247 F.3d at 997. The Court may not weigh Smith's evidence on summary judgment. *See Zetwick*, 850 F.3d at 441. From the Firearm Case Analysis, a reasonable juror drawing all inferences in Smith's favor could conclude that the shooting was accidental and that Smith, therefore, is not barred from receiving the Plan Benefits under 18-C § 2-802.

---

[3] Long makes clear, however, that for the shooting to be accidental, Smith must have been acting in a "grossly unsafe and reckless" manner. *Id.* at 11.

MEMORANDUM DECISION AND ORDER - 7

Further, the Court notes that the preliminary determination of the state magistrate judge, while informative, is not dispositive here. It is not clear that court had access to the Firearm Case Analysis, and even if it did, its findings do not bind this Court.

### 3. Conclusion

Because there are material facts here that are still in dispute—namely, whether Smith's shooting of Steinmetz was intentional or accidental—summary judgment is inappropriate. Therefore, Holley's Motion for Summary Judgment (Dkt. 24) is DENIED.

### C. Unum's Motion for Interpleader Relief (Dkt. 25)

The Court turns next to Unum's Motion for Interpleader Relief. Dkt. 25. Therein, Unum asks the Court to accept the Plan Benefits as a deposit, minus attorney's fees. *Id.* at 2. It also asks the Court to enjoin Smith and Holley from initiating any separate action against Unum and to require them to interplead their claims to the Plan Benefits here. *Id.* at 3. Finally, it asks the Court to declare that Unum has no further liability beyond the Plan Benefits and to discharge and dismiss Unum from these proceedings. *Id.*

### 1. Legal Standard

The purpose of an interpleader action is to allow a party to avoid "the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty." *Texas v. Florida*, 306 U.S. 398, 405 (1939). A stakeholder does not have to wait for the adverse parties to assert their claims before initiating an interpleader action; rather, it can initiate such an action once it is aware that the parties *may* claim entitlement to the subject property. 28 U.S.C. § 1335(a)(1).

An interpleader action generally has two stages. *See Mack v. Kuckenmeister*, 619

F.3d 1010, 1023 (9th Cir. 2010). First, "the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* (cleaned up). If the district court finds that such a circumstance exists, it then proceeds to determine "the respective rights of the claimants." *Id.* at 1024. Often, at this point, "the stake . . . is deposited with the court and the stakeholder is . . . dismissed." *Barnett v. Minnesota Life Ins. Co.*, 2022 WL 742717, at *2 (D. Idaho Mar. 11, 2022); *see also Furia v. McGrew*, 2020 WL 4208274, at *2 (E.D. Cal. July 22, 2020) ("Once the interpleader action has been properly brought and the funds have been deposited, the court should readily discharge a stakeholder absent bad faith or delay by the stakeholder.") (cleaned up); Wright & Miller, Federal Practice and Procedure: Civil 3d § 1704 (3d ed. 2001). The district court may also "enter its order restraining [the interpleader defendants] from instituting or prosecution any proceeding" against the plaintiff related to the subject property. 28 U.S.C. § 2361.

A stakeholder asking for an interpleader must have a good faith belief that there are or may be colorable competing claims to the funds at stake. *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012). This good faith standard is "not an onerous requirement" and "is necessarily low . . . ." *Id.* Good faith requires only "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims" and "does not mean that the interpleading party must show that the purported adverse claimant might eventually prevail." *Id.*

MEMORANDUM DECISION AND ORDER - 9

*2. Discussion*

Here, there is no dispute that Unum possess a single fund—the Plan Benefits—and that there are two adverse claimants to that fund—Smith and Holley. Both claimants have asserted a right to the Plan Benefits. *See, e.g.*, Dkts. 7, 11. Accordingly, the requirements for statutory interpleader have been met. Unum has also expressed its willingness and desire to deposit the Plan Benefits into the Court's custody, to be distributed upon the Court's determination of the rightful beneficiary. Dkt. 25-1, at 8. There is no evidence of any bad faith or delay on the part of Unum. Therefore, upon its payment of the Plan Benefits to the court registry, the Court will discharge Unum from any further liability related to the Plan Benefits and dismiss Unum from this case with prejudice. Also, upon payment, Smith and Holley will be enjoined from bringing any action against Unum in any state or federal court for recovery of the Plan Benefits or any portion thereof. Instead, they will be required to interplead their claims before the Court. If any person not yet joined as a party to this action makes a claim to the Plan Benefits, they will also be subjected to this Order.

*3. Attorney's Fees*

The Ninth Circuit generally recognizes the right of an interpleader plaintiff to seek recovery of attorney's fees and costs. *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426–27 (9th Cir. 2000). Such an award is appropriate here. However, it is not entirely clear what standard courts should use in calculating the amount of fees granted. Some district courts within the Ninth Circuit have applied the traditional lodestar test, *Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1168 (N.D. Cal. Feb. 10,

2012), while others have taken the position that in interpleader actions, a "less rigorous" approach should be used. *See Life Assur. Co. of Canada v. Chan's Estate*, 2003 WL 22227881, at *3 (N.D. Cal. Sept. 22, 2003).

While it has not resolved this question directly, the Ninth Circuit has advised that "awards [in interpleader actions] are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, *not* in litigating the merits of the adverse claimants' positions." *Tise*, 234 F.3d at 426. (emphasis in original). Thus, attorney's fee awards are "typically modest." *Id.* at 427.

Here, the Court finds no compelling reason to break from its traditional employment of the loadstar test. But before it can do so, the party requesting fees "must produce satisfactory evidence establishing the reasonableness of the requested fee. This evidence must include proof of market rates in the relevant community (often in the form of affidavits from practitioners), and detailed documentation of the hours worked." *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1077 (9th Cir. 2021) (cleaned up). Such evidence is particularly important for the Court to ensure that the award granted is properly limited, pursuant to *Tise*.

With its Motion, Unum submitted an affidavit from counsel for this case, outlining in very general terms the work they have done, the attorneys who did it, and the rates those attorneys have charged. Dkt. 26. While this submission gives the Court a basic idea of the basis for Unum's fee request, it does not include the specificity necessary for the Court to perform a loadstar analysis nor to ensure that the requested award of fees is properly limited. To remedy this situation, the Court grants Unum fourteen (14) days from issuance

MEMORANDUM DECISION AND ORDER - 11

of this order to file a copy of its detailed, itemized, and contemporaneous billing records and costs.[4]

       *4. Conclusion*

The requirements for statutory interpleader have been satisfied here, and there is no evidence that Unum has, at any point, acted in bad faith or unnecessarily delayed these proceedings. Accordingly, the Court will dismiss Unum and discharge it from further liability related to the Plan Benefits upon its payment of the Plan Benefits into the Court registry. However, before Unum can make such a payment, it must submit the above-requested billing records so that the Court can determine how much of the Plan Benefits Unum may retain as an award of attorney's fees and costs.

**D. Smith's Motion to Stay (Dkt. 28)**

The Court now addresses Smith's Motion to Stay. Therein, Smith asks the Court to put this case on hold pending the resolution of his criminal proceedings in state court. Dkt. 28, at 2. Holley did not respond, and Unum responded only to briefly argue that, if the Court is inclined to grant the stay, it should nevertheless dismiss Unum since its role in this proceeding has been fulfilled. Dkt. 30.

       *1. Legal Standard*

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–707 (1997) (citing *Landis v. N.*

---

[4] No motion should accompany Unum's submissions. The Court has already determined an award is appropriate; the only remaining question is the amount of that award. Thus, this supplemental information should include a simple explanation of the requested fees, rates, and costs; itemized copies of all requested fees and costs; and any affidavits for the relevant market rate.

MEMORANDUM DECISION AND ORDER - 12

*Am. Co.*, 299 U.S. 248, 254 (1936)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Determining whether to grant a motion to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.

When deciding whether to stay civil proceedings in the face of a parallel criminal proceeding, the Ninth Circuit has instructed courts to consider the extent to which the defendant's Fifth Amendment rights are implicated, the plaintiff's interest in resolving the civil litigation expeditiously, the burden the civil litigation may impose on the defendant, judicial economy, the interests of persons not parties to the civil litigation, and the public's interest in the pending civil and criminal litigations. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–35 (9th Cir. 1995).

    *2. Discussion*

The Court considers each of the factors outlined in *Keating* below.

    a. <u>Smith's Fifth Amendment Rights</u>

At the moment, it is not clear that proceeding with this litigation would impact Smith's Fifth Amendment rights. Smith has indicated some willingness to enter a plea agreement. Dkt. 28, at 2. If he does so, the Court would be less concerned about the Fifth Amendment implications of moving forward with this litigation. But for the moment, without a plea agreement in place, this factor weighs in favor granting a stay.

### b. Plaintiff's Interest in Expeditious Resolution

All parties have (or should have) at least some interest in the expeditious resolution of legal proceedings in which they are involved. However, where a party's particular circumstances strengthen that interest beyond what is typical, the Court would expect that party to so inform the Court. Here, Holley had an opportunity to advocate for an expedited resolution of this case (by responding to Smith's Motion for Stay) but did not do so. Accordingly, while the Court finds this factor to weigh against the imposition of a stay, it does so only minimally.

### c. Burden on the Defendant

Smith is currently navigating simultaneous civil and criminal lawsuits. In the civil litigation before this Court, he is proceeding pro se. This is undoubtedly a significant burden, made all the more so given that he is apparently currently incarcerated. Smith has expressed his frustration at this burden in his filings, stating he feels he is being given insufficient time to adequately defend himself. Dkt. 15, at 3; *see also* Dkt. 28. Accordingly, the Court finds this factor to weigh strongly in favor of a stay.

### d. Judicial Economy

It is not clear that staying this case until Smith's criminal proceedings are resolved will result in any *less* work for this Court or the criminal court. It will simply allow the Court to resolve this controversy with better information (as discussed in greater detail below). Accordingly, this factor weighs against granting a stay.

### e. Interests of Outside Individuals and the Public

Here, neither party has identified any outside interests that weigh for or against a

stay. Third parties and the public have a general interest in the speedy resolution of controversies. *See, e.g.*, *Keating*, 45 F.3d at 326. However, they also have an interest in controversies being resolved fairly. *See, e.g.*, *Cho v. City of San Jose*, 636 F. Supp. 3d 1034, 1040 (N.D. Cal. Oct. 20, 2022). Therefore, where, as here, the issuance of a stay will allow the Court to decide a case more fairly, then these interests balance out. Accordingly, the Court considers this factor to be neutral.

### f. Other Considerations

A major justification the Court sees for imposing a stay on this case until Smith's criminal proceedings have ended is that doing so would absolve the Court of the necessity of wading into the murky waters outlined by 18-C § 2-802(7). As noted above, where a defendant has yet to be convicted, § 2-802(7) requires a court to determine whether the individual is likely to be convicted under a preponderance standard. This may be appropriate, even necessary, in situations where no criminal conviction is imminent. But here, all indications suggest that Smith's criminal proceedings are rapidly moving toward a conclusion. Dkt. 28. Once they have concluded, the Court will be able to issue a ruling in this case based on the *actual findings* of the state court instead of a rough guess as to what the state court is *likely* to decide. The Court deems this to be a much more fair and desirable outcome. Accordingly, this consideration weighs strongly in favor of a stay.

### 3. Conclusion

Considering the collective weight of the foregoing factors and giving particular weight to the clarity that will be provided by a resolution of Smith's criminal proceedings, the Court finds that a stay of these proceedings until such a resolution is reached would be

appropriate. Accordingly, the Court GRANTS Smith's Motion to Stay.[5]

### E. Smith's Motion for Settlement Conference (Dkt. 29)

Finally, the Court turns to Smith's Motion for Settlement Conference. Dkt. 29. Typically, parties conduct settlement negotiations of their own accord, without Court involvement. The District of Idaho has alternative-dispute-resolution resources at its disposal, and it can employ those resources to help the parties if requested. However, given that the Court is staying this action, resorting to those measures would be premature at this point, as would ordering Holley to participate in a settlement conference. Accordingly, the Court DENIES Smith's Motion for Settlement Conference. However, the Court's denial should not be understood to foreclose future settlement discussions between Smith and Holley, as the parties deem appropriate.

### IV. CONCLUSION

In summary, Smith's Motion to Disqualify (Dkt. 23) is DENIED because he has not shown circumstances justifying recusal. Holley's Motion for Summary Judgment (Dkt. 24) is DENIED because whether Smith intentionally killed Steinmetz is a disputed material fact. Unum's Motion for Interpleader Relief (Dkt. 25) is GRANTED as outlined herein. Smith's Motion to Stay (Dkt. 28) is GRANTED because the resolution of Smith's criminal proceedings will greatly aid the Court in resolving the controversy in this case. Finally, Smith's Motion for Settlement Conference (Dkt. 29) is DENIED because the Court is

---

[5] This stay will *not* apply to Unum. Notwithstanding the stay, Unum should submit the documentation requested by the Court. Upon the Court's resolution of its request for attorney's fees, Unum must then deposit the Plan Benefits with the Court and will be dismissed and discharged of liability as outlined above.

MEMORANDUM DECISION AND ORDER - 16

staying this action and because a court-ordered settlement conference is not necessary for the parties to confer.

## V. ORDER

1. Smith's Motion to Disqualify (Dkt. 23) is **DENIED**.

2. Holley's Motion for Summary Judgment (Dkt. 24) is **DENIED**.

3. Unum's Motion for Interpleader Relief (Dkt. 25) is **GRANTED**.

    a. Within fourteen (14) days of issuance of this Order, Unum shall submit to the Court a copy of its detailed, itemized, and contemporaneous billing records and costs. Upon review, the Court will determine a proper award of attorney's fees. Then, Unum will submit to the Court the Plan Benefits, minus the Court's award.

4. Smith's Motion to Stay (Dkt. 28) is **GRANTED**.

    a. This case will remain stayed until Smith's criminal proceeding is resolved. Every ninety (90) days until the resolution of Smith's criminal proceedings, the parties shall file a status update with the Court, apprising the Court of any developments in those proceedings.

5. Smith's Motion for Settlement Conference (Dkt. 29) is **DENIED**.

DATED: August 29, 2024

David C. Nye
Chief U.S. District Court Judge