UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>STEVEN J. SMITH, an individual, and KRISTI HOLLEY, in her capacity as Personal Representative of the Estate of Dawn Marie Steinmetz,<br><br>      Defendants. | Case No. 1:23-cv-00426-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Defendant Steven J. Smith's Motion for Summary Judgment (Dkt. 46) and Motion for Settlement (Dkt. 45).

Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Accordingly, the Court will rule on the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES Smith's Motion for Summary Judgment and GRANTS in part and DENIES in part Smith's Motion for Settlement.

## II. BACKGROUND

### A. Factual Background

This action was initiated by Unum Life Insurance Company of America ("Unum")

pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. §§ 1335, 1397, and 2361. Unum requested that the Court determine the proper beneficiary of a life insurance policy. Unum then sought interpleader relief, asking the court to accept the Plan Benefits as a deposit, minus its attorney fees. The Court granted the interpleader relief. Dkt. 42.

During her life, Dawn Marie Steinmetz was an employee of Ensign Services, Inc. ("Ensign"), and a participant in a life and accidental death and dismemberment plan sponsored by Ensign and administered by Unum (the "Plan"). The Plan guarantees $25,000 in basic life coverage, $200,000 in supplemental life coverage, and $25,000 in basic accidental death and dismemberment coverage (the "Plan Benefits"). Steinmetz died on July 28, 2022, making the Plan Benefits payable to the proper beneficiary.

Kristi Holley—on behalf of the Estate of Steinmetz—and Smith have asserted competing claims to the Plan Benefits. At the time of Steinmetz's death, Smith was named as the primary beneficiary of the Plan. However, Smith was arrested on July 28, 2022—the date of Steinmetz's death—and was charged with murder for allegedly fatally shooting Steinmetz in the chest. Smith ultimately negotiated a plea agreement, pled guilty to involuntary manslaughter, and was sentenced on November 22, 2024. Dkt. 62, at 2.

**B. Procedural Background**

On May 8, 2024, Holley filed a Motion for Summary Judgment requesting the insurance proceeds be paid to the estate. Dkt. 24, at 3. The Court denied that Motion because, at that point, whether Smith intentionally killed Steinmetz was a disputed material fact. Dkt. 42, at 16.

On May 28, 2024, Smith filed a Motion for Settlement. Dkt. 29. In that motion,

Smith, among other things, proposed that the policy be split equally between the estate and himself. *See,* Dkt. 29-1. The Court denied that "motion" because settlement negotiations are between parties without the Court's involvement. Dkt.42.

On September 5, 2024, Smith filed a Motion for Proposed Settlement Offer. Dkt. 45. In his Motion, Smith proposes that the Court award him $110,000.00 and award the Estate of Steinmetz $130,000.00. *Id.* at 2. Holley filed a response on January 2, 2025, in which she asserts that the estate would be "willing to participate in a judicial settlement conference" pursuant to Local Civil Rule 16.4(b)(2). Dkt. 61, at 2.

Also on September 5, 2024, Smith filed a Motion for Summary Judgement. Dkt. 46. In this Motion, Smith's primary claim is that his wife's killing was accidental, and therefore, he is still entitled to the benefits of the policy. Dkt. 46-2, at 8.

Holley filed a response on January 2, 2025, opposing Smith's Motion for Summary Judgement. Dkt. 62. Holley argues the killing was probably intentional and cites Smith's expert's Firearm Analysis and other undisputed evidence in support of the killing being intentional. *Id.* Ultimately, Holley requests summary judgment be granted in favor of the estate. Dkt. 62, at 4.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the non-moving party need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). On the other hand, to succeed on a motion for summary judgment, the moving party must either (1) "produce evidence negating an essential element of the nonmoving party's claim or defense," or (2) "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

### B. Maine Probate Law and Involuntary Manslaughter

The Plan's Summary of Benefits identifies Maine as the governing jurisdiction under its choice-of-law provision.[1] Dkt. 1-1, at 3, 66. Under Maine's Probate Code, one "who feloniously and intentionally kills the decedent forfeits all benefits under this Article with respect to the decedent's estate . . . ." ME. REV. STAT. ANN. tit. 18-C, § 2-802(2) (2019). To determine whether there has been a felonious and intentional killing, there must be a judgment of conviction establishing such, or "[i]n absence of a conviction, the court,

---

[1] Where, as here, an action is brought under 28 U.S.C. § 1335, the federal district court should "apply the substantive law that a court of the forum state would apply." *Equitable Life Assurance Soc'y of U.S. v. McKay*, 837 F.2d 904, 905 (9th Cir. 1988). Idaho has a statute similar to Maine's, prohibiting a slayer from benefiting from his or her misdeeds. IDAHO CODE § 15-2-803(j)(1). However, "Idaho generally enforces choice-of-law provisions in contracts," unless doing so would run contrary to a fundamental state policy. *Stimpson v. Midland Credit Management, Inc.*, 347 F. Supp. 3d 538, 546 (D. Idaho 2018), *aff'd*, 944 F.3d 1190 (9th Cir. 2019). Neither party has raised, nor is the Court aware of any fundamental Idaho policy that would be violated by the Court's decision to honor the choice-of-law provision here. Accordingly, the Court finds the Maine statute, and not the Idaho statute, to be controlling.

upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent." *Id.* at § 2-802(7).

Under Idaho law, where Smith's criminal case was conducted, pleading guilty as part of a plea agreement is a conviction.[2] *See* I.C.R. 11(d)(3) (discussing a waiver of *post-conviction* proceedings as part of a guilty plea); *Simons v. State*, 773 P.2d 1156, 1157 (Idaho Ct. App.) ("Upon her plea of guilty, [Plaintiff] stands convicted of involuntary manslaughter.")." Idaho Code § 18-4006(2) defines involuntary manslaughter, in pertinent part, as "operation of any firearm or deadly weapon in a reckless, careless, or negligent manner which produces death." Section 18-4006 also expressly states manslaughter is an unlawful killing *without* malice. Malice is a manifested deliberate intention to unlawfully take a life, or circumstances which show an abandoned or malignant heart. IDAHO CODE § 18-4002.

## IV. ANALYSIS

The Court will take up each motion separately.

### A. Smith's Motion for Summary Judgment (Dkt. 46)

The Court first turns to Smith's Motion for Summary Judgment. Dkt. 46. Therein, he claims that his wife's killing was accidental (unintentional), and therefore, he is still entitled to the benefits of the policy. Dkt. 46-2, at 8. As noted before, Holley is arguing the killing was probably intentional, so despite the plea to involuntary manslaughter, Smith should be

---

[2] A plea of guilty is also a conviction under Maine law. Me. R. Unified Crim. P. 11(j) ("…[a] plea will result in a criminal conviction.").

precluded from receiving any benefits of the policy.

Summary judgment would only be proper at this stage if no reasonable factfinder could find Smith feloniously and intentionally killed his wife, which would preclude him from receiving any benefits under the Plan. Here, Smith's plea to involuntary manslaughter is felonious,[3] which would leave only intentionality for the court to consider.

The guilty plea alone cannot establish that Smith lacked intent to kill. Guilty pleas are often the result of negotiations, and defendants in criminal cases often plead to a lesser crime to avoid conviction of a greater crime. The guilty plea here is only one fact to be consider at trial.

Holley argues that Steinmetz's killing was probably intentional based on several pieces of evidence, including an expert report. Dkt. 62, at 3. Furthermore, Holley argues despite Smith's plea agreement, he would have to prove in this case that it was "probable" that he didn't intentionally kill Steinmetz based on the preponderance of the evidence standard applied in civil cases because this is a civil matter. Dkt. 62, at 3. Such arguments would likely be helpful to the Court if it were conducting the analysis that the Maine Slayer Statute calls for when there is an absence of a conviction. However, it is unnecessary for the Court to conduct such an analysis because there has been a conviction in this case.

Under Maine Probate Code, when there has been a conviction for the killing of the decedent, the only way a killer is automatically precluded from inheriting from the decedent's estate is if they were convicted for the felonious and intentional killing of the

---

[3] Involuntary manslaughter carries a potential penalty of up to 10 years in prison. Idaho Code § 18-4007(2).

decedent. Thus, it follows that a conviction for the unintentional killing of a decedent would not fit these criteria, and it would be improper to grant summary judgment solely on the basis of § 2-802(7). The Court, at this juncture, must only determine whether a conviction for involuntary manslaughter under Idaho law necessarily indicates a killing was intentional. In sum, the Court is not a fact finder here. Rather, the Court will simply determine whether a reasonable jury could still find Smith intentionally killed his wife.

As noted above, involuntary manslaughter is a killing performed without malice, and malice is the deliberate intention to kill another. Accordingly, Smith only has a conviction for the felonious and *unintentional* killing of his wife. His conviction does not preclude him from inheriting under the Maine Probate Code, and it is not proper to grant summary judgment to Holley on this basis.

With that acknowledgment, Smith's conviction is only one piece of evidence in this case. A reasonable factfinder, when presented with all the evidence and having an opportunity to weigh the evidence and determine creditability, could still conclude, under a preponderance of the evidence standard, that Smith killed his wife intentionally. A reasonable factfinder could also conclude that the involuntary manslaughter conviction is persuasive, and this was an unintentional killing. Importantly, this continues to be a dispute of material fact in this case such that summary judgment is not proper in favor of either party at this point.[4] Accordingly, Smith's Motion for Summary Judgment (Dkt. 46) is DENIED.

---

[4] Neither party has demanded a jury trial in accordance with Federal Rule of Civil Procedure 38(b). The Supreme Court has held interpleader actions, which are equitable in nature, do not carry the right to a jury trial under the Seventh Amendment. *Liberty Oil Co. v. Condon Nat. Bank*, 260 U.S. 235, 244 (1922); *see also Smith Engineering Co. v. Pray*, 61 F.2d 687, 692 (9th Cir. 1932) (citations omitted) ("…[T]he equitable issue raised should first be disposed of as in a court of equity, and then if an issue at law remains, it is triable

### B. Smith's Motion for Settlement (Dkt. 45)

Finally, the Court turns to Smith's Motion for Settlement Conference.[5] Dkt. 45. Typically, parties conduct settlement negotiations of their own accord, without Court involvement. The District of Idaho has alternative-dispute-resolution resources at its disposal, and it can employ those resources to help the parties if requested. However, given that the Court only recently lifted the stay in this case (Dkt. 56), and the parties have been waiting for a ruling on the instant Motion for Summary Judgment, resorting to those measures would be premature at this point, as would ordering Holley to participate in a settlement conference. The parties are encouraged to work amongst themselves to arrange a settlement conference, should they so choose. Accordingly, the Court GRANTS Smith's Motion for Settlement (Dkt. 45) in a limited fashion. However, the Court will not grant the Motion to the extent it requests specific amounts to be awarded to each party, and those terms should be discussed amongst the parties at the settlement conference.

## V. CONCLUSION

In summary, Smith's Motion for Summary Judgement (Dkt. 46) is DENIED

---

[5] to a jury."); *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1012 (9th Cir. 2012) (cleaned up) ("It is generally recognized that interpleader developed in equity and is governed by equitable principles."). Accordingly, if this case fails to settle, it will be set for a bench trial. If either party believes this case should proceed to a jury trial, they must submit supplemental briefing on the issue within fourteen (14) days of the issuance of this Order.

[5] In Smith's Reply (Dkt. 63) to the Motion for Summary Judgment, which is Smith's most recent filing in this case, he stated, "I don't want to meet David Kerrick under the lies that have been told so I ask for no settlement meeting at this time. With all the lies I feel it would be a waste of time." Dkt. 63, at 12. Apart from this, the parties have repeatedly mentioned their desire and willingness for a settlement conference. The Court's analysis is applicable whether Smith's interest in conducting a settlement conference has changed or not. The parties should confer with each other to conduct a settlement conference if able. If not, this case will move forward in the traditional litigation process.

because a dispute of material fact remains in the case. Smith's Motion for Settlement (Dkt. 45) is GRANTED in part and DENIED in part.

## VI. ORDER

1. Smith's Motion to for Settlement (Dkt. 45) is **GRANTED in part and DENIED in part**.

2. Smith's Motion for Summary Judgment (Dkt. 46) is **DENIED**.

3. If either party believes this case should proceed to a jury trial rather than a bench trial, they have fourteen (14) days to submit supplemental briefing on the issue. The brief should not exceed ten (10) pages.

DATED: April 16, 2025

David C. Nye
Chief U.S. District Court Judge